**FILED**
DEC 14 2016 TM
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. **16CR 811** |
| | ) | |
| | ) | Violation: Title 18, United States |
| vs. | ) | Code, Section 1348(1); Title 15, |
| | ) | United States Code, Sections 80b-6(1) |
| | ) | |
| CHARLES J. DUSHEK | ) | |

JUDGE KENDALL

COUNT ONE   MAGISTRATE JUDGE FINNEGAN

The SPECIAL FEBRUARY 2016 GRAND JURY charges:

1.  At times material to this indictment:

    a.  Capital Management Associates, Inc. was an Illinois corporation with its principal place of business in Lisle, Illinois. CMA was registered as an investment adviser with the Illinois Securities Department. CMA managed more than $25 million in assets held in brokerage, individual retirement, and retirement plan accounts for clients located across the United States.

    b.  Defendant CHARLES J. DUSHEK was a shareholder and president of CMA. Defendant CHARLES J. DUSHEK was registered as an investment adviser representative with the Illinois Securities Department, and advised and provided discretionary management services for clients at CMA that included the selection of securities for client accounts.

    c.  Co-Schemer A was a shareholder and the vice president of administration at CMA.

    d.  Trust Company A was a trust company based in Lisle, Illinois that acted as the custodian for CMA's accounts. In this capacity, Trust Company A held funds and securities belonging to CMA account holders.

    e.  CMA received discretionary trading authorization from its clients, but purported to act in the best interests of its clients consistent with the client's investment objectives and further represented that it would allocate trades in a fair and equitable manner.

    f.  Defendant CHARLES J. DUSHEK and Co-Schemer A traded securities on behalf of themselves, family members, CMA, and CMA clients through brokerage accounts maintained at Charles Schwab & Co., Inc. and E-Trade Securities, LLC. The securities and funds associated with the trading of these securities settled into CMA accounts held by Trust Company A.

    g.  Trust Company A provided CMA with software that allowed CMA employees, including defendant CHARLES J. DUSHEK and Co-Schemer A, to identify the specific CMA accounts to which particular trades should be allocated at the time the trades were ordered. Trust Company A also advised CMA and defendant that the best practice was to allocate trades on the date of the trade and, to the extent that trades could not be allocated on the date of the trade, Trust Company A informed CMA that account allocation information was to be provided to Trust Company A by no later than 9:00 a.m. of the morning following the completion of the trade.

h. Between in or about July 2008 and in or about August 2012, defendant CHARLES J. DUSHEK and Co-Schemer A made over 16,000 purchases of publicly traded securities valued at over $400 million at the time of purchase.

2. Beginning as early as in or about July 2008, and continuing to in or about August 2012, at Lisle, in the Northern District of Illinois, and elsewhere,

CHARLES J. DUSHEK,

defendant herein, along with Co-Schemer A, did knowingly execute and attempt to execute a scheme and artifice to defraud clients of CMA in connection with securities of an issuer with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78*l*), specifically, shares of publicly held corporations.

2. It was part of the scheme that defendant CHARLES J. DUSHEK and Co-Schemer A knowingly engaged in a fraudulent trade allocation scheme by allocating profitable trades of securities of publicly held corporations to CMA proprietary accounts and personal accounts belonging to defendant, Co-Schemer A, or family members, and allocating unprofitable trades of such securities to CMA client accounts at times when defendant knew whether the trades were profitable or not.

3. It was further part of the scheme that defendant CHARLES J. DUSHEK entered into investment advisory agreements with clients that falsely represented that CMA's policy was to allocate investment opportunities to client accounts on a fair and equitable basis, defendant DUSHEK knowing that he and Co-Schemer A intended to, and did, unfairly allocate profitable trades to CMA proprietary accounts or their personal accounts, and unfairly allocate unprofitable trades to client accounts.

4. It was further part of the scheme that defendant CHARLES J. DUSHEK and Co-Schemer A placed orders for the purchase of securities online through the brokerage accounts maintained by CMA, defendant DUSHEK knowing that he and Co-Schemer A intended to, and did, unfairly allocate profitable trades to CMA proprietary accounts or their personal accounts, and unfairly allocate unprofitable trades to client accounts.

5. It was further part of the scheme that defendant CHARLES J. DUSHEK and Co-Schemer A waited from about one to five days before directing Trust Company how to allocate securities to particular client accounts, CMA proprietary accounts, or their personal accounts, in order to provide themselves with time to determine whether the securities traded had increased or decreased in value before deciding how to allocate the trades amongst those accounts.

6. It was further part of the scheme that, after waiting to determine if the purchased securities increased or decreased in value, defendant CHARLES J. DUSHEK and Co-Schemer A sold securities that had increased in value through CMA's brokers and directed Trust Company A to allocate those trades and the profits stemming therefrom to CMA proprietary accounts and their personal accounts.

7. It was further part of the scheme that, after waiting to determine if the purchased securities increased or decreased in value, defendant CHARLES J. DUSHEK and Co-Schemer A directed Trust Company A to allocate the trades for securities that had not increased in value by that time to client accounts.

8. It was further part of the scheme that defendant CHARLES J. DUSHEK and Co-Schemer A created and caused the creation of spreadsheets that identified whether

particular trades of securities should be allocated to client accounts, CMA proprietary accounts, or their personal accounts, defendant knowing that he had manipulated the allocations detailed on the spreadsheets by waiting one to five days after the trades were complete before allocating the trades to fraudulently ensure that profitable trades were allocated to CMA proprietary accounts and to his and Co-Schemer A's personal accounts, and unprofitable trades allocated to client accounts.

9. It was further part of the scheme that defendant CHARLES J. DUSHEK and Co-Schemer A provided and caused to be provided to Trust Company A the spreadsheets that tracked the trade allocations, defendant knowing that he had manipulated the allocations detailed on the spreadsheets by waiting one to five days after the trades were complete before allocating the trades to fraudulently ensure that profitable trades were allocated to CMA proprietary accounts and to his and Co-Schemer A's personal accounts, and unprofitable trades allocated to client accounts.

10. It was further part of the scheme that defendant CHARLES J. DUSHEK issued and caused the issuance of CMA brochures that falsely represented that "[w]e do not merge or aggregate any client order with any employee order," defendant knowing that he and Co-Schemer A intended to, and did, trade securities without allocating those trades until after defendant and Co-Schemer A had determined the profitability of the trades.

11. It was further part of the scheme that defendant CHARLES J. DUSHEK issued and caused the issuance of brochures that falsely represented that he maintained reports of his personal trading and caused an associate to review the reports, defendant

knowing that he did not maintain any such reports or submit any such reports to an associate for review.

12. It was further part of the scheme that defendant CHARLES J. DUSHEK withdrew from his personal accounts over $1 million in gains realized from the scheme between in or about July 2008 and August 2012.

13. It was further a part of the scheme that defendant CHARLES J. DUSHEK concealed, misrepresented, and hid, and caused to be concealed, misrepresented, and hidden, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

14. On or about February 21, 2012, in the Northern District of Illinois, and elsewhere,

CHARLES J. DUSHEK,

defendant herein, knowingly executed and attempted to execute the scheme by causing the sale of 500 shares of a publicly traded company, namely Pepsico, Inc., which had been purchased approximately six days earlier, and subsequently allocating the trade to a personal account;

In violation of Title 18, United States Code, Section 1348(1).

## COUNT TWO

The SPECIAL FEBRUARY 2016 GRAND JURY further charges:

1. The allegations of paragraphs 1 through 13 of Count One are incorporated here.

2. On or about February 27, 2012, in the Northern District of Illinois, and elsewhere,

### CHARLES J. DUSHEK,

defendant herein, knowingly executed and attempted to execute the scheme by causing the sale of 500 shares of a publicly traded company, namely American Electric Power Co., Inc., which had been purchased approximately four days earlier, and subsequently allocating the trade to a personal account;

In violation of Title 18, United States Code, Section 1348(1).

## COUNT THREE

The SPECIAL FEBRUARY 2016 GRAND JURY further charges:

1. The allegations of paragraphs 1 through 13 of Count One are incorporated here.

2. On or about February 27, 2012, in the Northern District of Illinois, and elsewhere,

## CHARLES J. DUSHEK,

defendant herein, knowingly executed and attempted to execute the scheme by causing the sale of 2,250 shares of a publicly traded company, namely Johnson & Johnson, which had been purchased approximately three days earlier, and subsequently allocating the trade to a personal account;

In violation of Title 18, United States Code, Section 1348(1).

## COUNT FOUR

The SPECIAL FEBRUARY 2016 GRAND JURY further charges:

1. The allegations of paragraphs 1 through 13 of Count One are incorporated here.

2. On or about April 27, 2012, in the Northern District of Illinois, and elsewhere,

### CHARLES J. DUSHEK,

defendant herein, knowingly executed and attempted to execute the scheme by causing the sale of 1,000 shares of a publicly traded company, namely AstraZeneca PLC, which had been purchased approximately one day earlier, and subsequently allocating the trade to a personal account;

In violation of Title 18, United States Code, Section 1348(1).

## COUNT FIVE

The SPECIAL FEBRUARY 2016 GRAND JURY further charges:

1. The allegations of paragraphs 1 through 13 of Count One are incorporated here.

2. On or about May 7, 2012, in the Northern District of Illinois, and elsewhere,

CHARLES J. DUSHEK,

defendant herein, knowingly executed and attempted to execute the scheme by causing the sale of 1,000 shares of a publicly traded company, namely British Petroleum, which had been purchased approximately three days earlier, and subsequently allocating the trade to a personal account;

In violation of Title 18, United States Code, Section 1348(1).

## COUNT SIX

The SPECIAL FEBRUARY 2016 GRAND JURY further charges:

1. The allegations of paragraphs 1 through 13 of Count One are incorporated here.

2. On or about May 11, 2012, in the Northern District of Illinois, and elsewhere,

CHARLES J. DUSHEK,

defendant herein, knowingly executed and attempted to execute the scheme by allocating the purchase of 1,500 shares of a publicly traded company, namely British Petroleum, which had been purchased three days earlier, to various client accounts;

In violation of Title 18, United States Code, Section 1348(1).

## COUNT SEVEN

The SPECIAL FEBRUARY 2016 GRAND JURY further charges:

1. The allegations of paragraphs 1 through 13 of Count One are incorporated here.

2. On or about May 21, 2012, in the Northern District of Illinois, and elsewhere,

**CHARLES J. DUSHEK,**

defendant herein, knowingly executed and attempted to execute the scheme by causing the sale of 1,000 shares of a publicly traded company, namely Caterpillar, Inc., which had been purchased approximately four days earlier, and subsequently allocating the trade to a personal account;

In violation of Title 18, United States Code, Section 1348(1).

## COUNT EIGHT

The SPECIAL FEBRUARY 2016 GRAND JURY further charges:

1. The allegations of paragraphs 1 through 13 of Count One are incorporated here.

2. On or about May 31, 2012, in the Northern District of Illinois, and elsewhere,

CHARLES J. DUSHEK,

defendant herein, knowingly executed and attempted to execute the scheme by causing the sale of 2,500 shares of a publicly traded company, namely Avon Products, Inc., which had been purchased approximately one day earlier, and subsequently allocating the trade to a personal account;

In violation of Title 18, United States Code, Section 1348(1).

## COUNT NINE

The SPECIAL FEBRUARY 2016 GRAND JURY further charges:

1. The allegations of paragraphs 1 through 13 of Count One are incorporated here.

2. On or about June 5, 2012, in the Northern District of Illinois, and elsewhere,

CHARLES J. DUSHEK,

defendant herein, knowingly executed and attempted to execute the scheme by causing the sale of 1,500 shares of a publicly traded company, namely Walgreens Company, which had been purchased approximately four days earlier, and subsequently allocating the trade to a personal account;

In violation of Title 18, United States Code, Section 1348(1).

## COUNT TEN

The SPECIAL FEBRUARY 2016 GRAND JURY further charges:

1. The allegations of paragraphs 1 through 13 of Count One are incorporated here.

2. Beginning as early as in or about July 2008, and continuing to in or about August 2012, at Lisle, in the Northern District of Illinois, and elsewhere,

## CHARLES J. DUSHEK,

defendant herein, an investment adviser representative, willfully, by use of means and instrumentalities of interstate commerce to purchase and sell securities in publicly traded companies, including the trades referenced in Counts One through Nine of this indictment, directly and indirectly (a) employed a device and scheme to defraud a client; and (b) engaged in a transaction, practice, and course of business which operated as a fraud and deceit on a client;

In violation of Title 15, United States Code, Sections 80b-6(1) and (2) and 80b-17.

_____
FOREPERSON

_____
UNITED STATES ATTORNEY